Mr. Boone. Mr. Chief Judge, I may have to please the court. Criminal contempt is not a strict liability crime. Let me say something real quick. Are we going to avoid saying the defendant's name during argument? Just refer to her as the defendant. The parties haven't moved to seal these proceedings, I don't believe. Okay, go ahead. So the name is fair game to say? I plan on saying it, Your Honor. Okay. As I said, criminal contempt is not a strict liability crime. It requires, and I'm quoting from this court's decision in United States v. Marks, a volitional act done by one who knows or should reasonably be aware that their conduct is wrongful. That specific criminal intent, that's an essential element of the offense. In light of that fact, United States v. Marks, it's 553F2nd874. In light of that fact, this court and other circuits have held that a good faith but mistaken attempt to comply with the subpoena negates the willfulness element of criminal contempt. And that's what happened here. My client, Mrs. Westbrooks, received a subpoena from the government. She gave that subpoena to her attorney, explained the circumstances surrounding it, including the fact that the government had earlier executed the search warrant at her employer's office, took his advice, and complied with the subpoena in the way that he instructed. That's not willful disobedience. How do we know what the attorney's advice was? Well, we know that from Mrs. Westbrooks' testimony at the show cause hearing. She testified, and the government never contradicted it. This testimony, and the court really never questioned her credibility on this score, that she had given the subpoena to her attorney almost straightway after receiving it, that her attorney had told her, paraphrasing, basically, you don't have to reproduce everything that the government already has in its possession. You should go back to your office and get any new stuff that has come in the mail and take that with you to the grand jury. And the district court never doubted her credibility on those bits of testimony. Once Mrs. Westbrooks testified to that effect, the government bore the burden of proving, beyond a reasonable doubt, that she lacked good faith in responding to the subpoena. But the district court never looked to the government to disprove anything. In fact, it consistently looked to Mrs. Westbrooks to prove her good faith. Now, that error is understandable, perhaps, given that the district court didn't have the benefit of the Supreme Court's recent decision in Smith v. United States, in which the court made it very clear that the government is foreclosed from shifting the burden of proof on an affirmative defense when it negates an element of the crime. But it was an error nonetheless, and it's per se reversible, because in setting up the framework the way that the district court did, he shifted the burden of proof to my client, depriving her of due process. Explain to me how it negates the burden of proof? Well, there's plenty of evidence that she didn't understand what the subpoena was at all. She even said that in her testimony below, she said, I didn't know what I was doing. And then going from there, her counsel said, you should go back to the office, you should get any records that were not produced in response to, or were not seized during the earlier... But she didn't do that. In other words, there was, what'd she say, like 10 percent were not taken. I mean, she didn't go back, she didn't bring with her to the grand jury documents that were not seized. Well, there's some question about whether those documents even exist, and backing up I guess, the district court all along questioned or expressed deep skepticism about whether the 10 percent of documents that the government sought even existed. If you look at JA 361, you'll see in the district court's findings of fact, he says, and with respect to the 10 percent documents, the documents that the government was seeking, I'm still not really sure that they would be responsive to the subpoena that Mrs. Westbrook's received. And in fact, two witnesses... The district court also found that Mrs. Westbrook didn't even look. The district court found that she didn't look in certain cabinets at her employer's office, but she testified again, I think credibly, and there's nothing countermanding this in the record, that she didn't think any records were in those cabinets. And so if you didn't think that there were any records in those cabinets, you may think that that might seem unreasonable, but we're here talking about her mental state, and she really believed that there were no records in those cabinets. And in any event, the government put on no evidence below disproving her statements that she was acting in good faith. How do we know that the council knew everything that the government sees, what that was? Well, we know from Mrs. Westbrook's testimony at the show cause hearing that she discussed the subpoena with her attorney, including the evidence. In this record, how do we know that council knew what was seen? That her trial counsel knew what was seen? She told him. Does she have a list? She, I think, probably spoke in general terms about... Is this in the record, or are you just speculating? It's in the record that she told her counsel that the government had searched, executed a search warrant at her employer's office, and had taken 90% of the paper files and all of the computer files, which I should mention, duplicated the paper files. So anything that the government wanted, they had in the computer files. And so she certainly told her... Well, did counsel know what she had left, the residual documents not seen? We know from her testimony that she explained to her attorney that she had received the subpoena and that she had seen all this transpire. We don't have every word that she spoke to her attorney transcribed in her... That's the problem. If you're going to rely on counsel, then you seem to me you have to show at least a burden going forward that counsel had what was necessary to make, to give advice. But it seems in the record, it's there as to whether or not council knew what was seen or had reviewed what was the residual document. Without that, it seemed like court didn't shift the burden, but it did. As a matter of law, she didn't meet the affirmative defense. Well, the burden of production that Mrs. Westbrook faced was reasonably light. The Supreme Court in Fleischman said that the burden on folks in Mrs. Westbrook's use is not an oppressive one. It's a minimal one. And this court has said that the burden requires two things. As you note, Judge Gregory, it requires full disclosure of all pertinent facts to the both of those requirements. She gave her attorney the subpoena. She said, this is what happened before. This is what I know about what they took. What do I do? But the problem is the subpoena alone is not the semi-quanone. It's really counsel being able to say, no, what you have given satisfies the subpoena. Or, and, what's left is not in compliance, not required. But without clear, as the counselor had said, and yes, she did meet the second problem. She did rely, but is that reliance really sufficient? Even, I agree, there's a light burden, but you do have to pass it under the counsel's nose to make sure he or she can advise, even errantly, on what they're supposed to be advising on, don't they? I understand, Judge Gregory, and I think, and I would submit that that happened here in the fact that Mrs. Westbrooks told her attorney about the subpoena, gave it to him, and explained all the, sort of, the backstory of the government's investigation of her employer. I don't know that she has to recount in painstaking detail in her testimony in the show cause hearing everything that she said to her lawyer to meet the first prong of the Powell-Walters two-prong test. It seems to me, if you require much more of her, you are shifting the burden of proof to her on an element of the crime, and that the court could not do. My reading, and I'm looking at page 243 of the JA, my reading of her testimony is that the lawyer never told her, there are documents or items you do not need to turn over. I'm looking up at the question that was asked at the top of that page and the answer. Did you ever discuss with your lawyer, with your attorney, that there were certain records that he thought you needed to turn over, and certain records you did not need to turn over? Did you have any kind of conversation about not turning over specific records to the government? And her answer was no, sir. I think in- But you never told her, there are documents or items you do not need to turn over. I would agree that her testimony was that her attorney never told her, there are some documents you don't need to turn over. I don't think she's saying here, we didn't discuss the documents. I think that's a crucial difference. Again, her burden is a minimal one here, if it is to be a burden of production at all. If it's such that she has to prove by more than a preponderance of the about the subpoena, about the circumstances surrounding the subpoena, that seems to me to be more akin to a burden of persuasion, which she can't carry in this context. And I would point out again that the government never offered any evidence below countermanding her testimony that she disclosed the subpoena to her attorney, discussed the contents of the subpoena and the search with her attorney, and relied in good faith on her counsel's advice. The government could have put that evidence on, it could have, for instance, called her trial counsel and asked, what did you tell her? She could have called trial counsel. She could, but I don't think it was incumbent on her to do that once she met her burden of proof. You weren't even asked, why would you call trial counsel? And the response was, well, it's not necessary. On the belief that the government bore the burden of disproving her good faith, once she had testified credibly that she had relied on counsel's advice. And so the government at that point could have called her attorney and asked, what did you tell Mrs. Westbrooks? What advice did you give her? And that, by doing so, perhaps could have met its burden of proving beyond a reasonable doubt or disproving beyond a reasonable doubt that she acted in good faith. It didn't offer that evidence. There is no evidence to the contrary in the record. Well, what in the record establishes that when Ms. Westbrook appeared before the grand jury that she identified to the grand jury that her failure to comply was due to the advice of counsel, she was acting on the advice of counsel? I would point you to page 73 of the joint appendix and the surrounding pages, where in context it's clear, although we just have a snippet of the grand jury transcript, it's clear in context that she's bringing the documents to the grand jury. She had to be excused, as you know, to go get the documents from her attorney, who was waiting outside. But I think it's pretty well clear from the context that she was relying on her attorney's advice in proceeding the way that she did. But she never said, I'm relying on the advice of counsel to bring only what I brought. She didn't use those words, but she did say, my attorney has the records outside. He told me to open them and look at them, and here they are. And so I think that that qualifies as, if you need to look to grand jury testimony, as her raising this at the grand jury. Wasn't most of that unopened mail? Some of it was unopened mail. Some of it was junk mail. But she had been, again, she had been instructed just to go get everything at her employer's office. I mean, her attorney had told her, you don't have to get everything that the government already has. Go back and look for anything new and secure the office, bring the mail with you, or take it with you to the grand jury proceeding. And so some of it was responsive, as the government admitted below. Some of it wasn't. But she was just following her attorney's advice. The government also suggests in its briefing that allowing a good faith defense here or in this context would hamstring its ability to get documents through subpoenas. On the theory, I suppose, that every witness, potential witness, will raise their hand and say, I'm relying on my counsel's advice not to produce documents. That's simply not true. The government has other enforcement mechanisms at its disposal, including civil contempt. It asks the court to confine a recalcitrant witness until they obey an order. It can also seek monetary sanctions. And I see my time is about up. I will make one last point. The government cites a number of cases in its briefing on the burden shifting issue and on whether good faith is a defense. In each of those cases, the witness flat out refused to comply. It didn't from our case. That's not Mrs. Westbrook's. She showed up to the grand jury. She brought records with her on her counsel's advice. She certainly couldn't be said to have willfully disobeyed the order. And if I may, I'll reserve the balance of my time. Okay. Miller. You may please the court. My name is William Miller here on behalf of the United States. The district court did not err, let alone plainly err, in finding that the defendant in this case willfully and wrongfully failed to comply with the clear and unambiguous grand jury subpoena. The defendant's argument that the district court somehow shifted the burden is simply not supported by a close review of the record and what the district court did in this case. The district court stated at the outset after reciting the elements of criminal contempt, which were in fact drawn from the Marks case that defense counsel cited at the beginning of his argument, the district court clearly placed the burden on the government to quote, prove beyond a reasonable doubt that each of the elements of contempt have been established. Didn't he refer to the advice of counsel as an affirmative defense? Yes, your honor. He did. He referred to it as an affirmative defense, but at no point did he shift the burden to the defendant to disprove that intent. Doesn't the, in the characteristic of an affirmative defense, the defendant has the burden of proving it? Well, I sort of see affirmative defenses as falling into two categories. You have an affirmative defense that has a burden, and then you have like a negating affirmative offense, which is what this particular advice of counsel defense is. It would negate the intent element. Give me an example of an affirmative defense that the defendant doesn't have the burden of establishing. This is one here where the defendant doesn't have the burden of proving anything new. It's a negating offense that negates the element of intent. And so, and this is from the Smith case that defense counsel cited. There's no burden on the defendant in one of these negating offenses where it goes to an element of the crime. So it negates intent. And so the critical inquiry is, did the government have the burden of proving intent beyond reasonable doubt throughout? And there's no evidence that the court shifted that back to the defendant in this case. An example on the other side, your honor, would be like withdrawal from a conspiracy, which is what was at issue in Smith. In that case, the defendant does have a burden of proving that he withdrew from the conspiracy. But with advice of counsel, where the affirmative defense is negating an element that the government had to prove, in that case, as long as the burden of proof remains with the government throughout, there's no error. And that's what happened in this case. All that the court did was simply assess the defendant's evidence as to the advice of counsel defense and found that the defendant's conduct in this case didn't fall within the confines of that defense. And that's entirely appropriate in cases involving affirmative defenses like this one. As long as the district court places the burden of proving criminal intent on the government, the court can consider the defendant's evidence of the advice she received as well as whether or not her counsel had all of the information before giving that advice in evaluating whether or not the government carried its burden in proving intent. What is the evidence of intent here? She did show up. The government had already rifled through her drawers under the file cabinets and taken 90% of the records already. And the only thing you have is that someone, I guess an expert, qualified to say, well, based on my understanding of businesses, a business like this ought to have more records. That, against someone who shows up, goes to a lawyer, thinks that you have everything, where's the evidence of willful intent? What the district court found is that the defendant didn't have that choice to just refuse to comply. Whether or not the government had many or most of the documents, what the district court found was that when presented with a clear order where she didn't negotiate some sort of other type of agreement, the defendant couldn't show up with just junk mail and say this is my compliance with the subpoena. That that, in essence, was a refusal to comply with the subpoena. And so the fact that the government may have had many if not most of the documents that were responsive to the subpoena, the district court found wasn't sufficient to relieve her burden to comply with the subsequent subpoena. That wasn't her choice. They had, as in this case, executed the warrant and seized 99.9% of all of her records. If she shows up and says, well, you know, I think it's everything, they have everything. I really do. They cleared me, cleaned me out. So if they showed that there was one document left in a file drawer that she didn't bring with her, that's criminal contempt? What's criminal contempt in this case, Your Honor? And that was the that was the gist of the entire show cause hearing is are there other documents? And what the district court said is it doesn't matter because she was presented with the subpoena and she had to comply with that subpoena. And so she didn't have the choice, even if she thought the government had everything, to simply show up with junk mail. She could have negotiated a different method of production. The court noticed that. And or she could have moved to quash the subpoena. But what she couldn't do is show up with junk mail to the grand jury without having negotiated some sort of agreement regarding the scope of what she was required to produce. So a lot, and this is coming from the district court's ruling, what the district court said is you can't allow witnesses to make those types of choices without some sort of conversation with the government because it would undermine the whole process. The witness who's subject to the subpoena doesn't get to make that choice. And so the intent in this case and the willfulness and wrongful conduct that the district court found was based on the fact that the defendant didn't look for anything, went and grabbed the junk mail, and brought it to the grand jury. At the advice of counsel. Well, she didn't. Undisputed. That counsel told her to gather up all of the mail you have and things you've gotten sent and bring it to the court. That was counsel's advice to her. She didn't just do that whimsically. She did it at the direct advice of counsel. The district court did not find her to be credible on that point. And twice pointed out in its ruling. What disputed it? The district court just came out of the whole closet. I don't believe something. What disputed that she was told by counsel to do that and she does show up exactly with those documents? What's in the record that disputes that? What disputes that is the fact that it was a recent statement. The court made the point that she was telling this story for the first time at the show cause hearing. She had made no representation during the grand jury that her actions were in reliance on advice of counsel. And so that's one of the factors. Well, isn't it documented that her counsel was outside? Her counsel was outside. And that seems to be contemporaneous evidence that corroborates that she was contemporaneously exchanging conversation with counsel because counsel was present. If anything, the fact that her counsel was outside further highlights the fact that she didn't come back in and say my counsel is telling me that this is my compliance. She didn't assert an advice of counsel defense despite the fact that counsel was sitting right outside. What she said instead was that I didn't have to comply because you guys had everything. And the district court found that that was insufficient. That that was a willful and wrongful filing of the subpoena in this case and punishable as contempt. But for the grand jury, does she have to cite legal arguments before grand jury or just give testimony? It doesn't belong to the government. And I mean, that's the problem is the grand jury doesn't belong to the prosecution. It is a grand jury. She doesn't have to cite legal arguments to them. She's a fact witness. She's not a proper form. She does cite the defense of counsel's advice. Well, do you think she's waived it because of that? No, it's not a waiver argument. It's a credibility argument. And like any fact finder, the district court in this case had to weigh the credibility of the witness. How can you be found not credible because you do that, which normally the process does not involve? The process doesn't involve going to the grand jury, telling them a legal defense. That's not your fact witness. Refusal, excuse me. Was it not her job to be a fact witness under oath? Her job was to produce documents in response to the subpoena and to testify before the grand jury and to assert immunities or other defenses. In fact, in this case, the defendant had indicated she was going to assert a Fifth Amendment privilege to the production of the documents. And so that again shows, look, she's asserting or suggesting that she's going to assert Fifth Amendment privilege, but yet doesn't come in and raise an advice of counsel defense. So the defendant in this case on appeal has not shown that the district court's finding that the defendant was not credible on that point was clearly erroneous and hasn't even argued that the district court's factual findings were clearly erroneous. He hasn't attacked the district court's factual findings in this case. And I would suggest that those factual findings undermine much of the defendant's argument in this case. In his reply brief or in her reply brief, the defendant suggested that she, quote, made a good faith but mistaken attempt to comply with subpoena based on the advice of counsel and has repeated that argument here today. What that does, though, is ignores the factual findings that were made by the district court in this case. What the defendant is arguing is essentially suggesting that this court should rebalance those credibility determinations made by the district court. And that's not this court's function. And just point out also that the standard of review in this case is a plain error standard of review. There was no contemporaneous objection made to the recitation of the elements, both the court actually at two instances recited the elements that it was applying in this case. The first was prior to the counsel's argument. There was no objection at that time. And then in connection with announcing its ruling in this case, the court once again repeated its elements and there was no objection. And so you may have already said this. I have. I apologize. But is it your position that advice of counsel is a defense to a contempt charge? It depends on the circumstances, Your Honor. I don't think that defendant and the government are as far apart on the law in this case as defense counsel would suggest. What the government says and what the case law says is that if a defendant flatly refuses to comply with a subpoena, if the court tells someone to do something, that person can't come back and say, my attorney told me not to do it. And that's where you can't have a defense of advice of counsel, when you flatly refuse to comply with a clear order of the court. And the government argues that bringing in the junk mail was, in essence, a flat refusal of that court order in the form of the subpoena. Where you may be able to prove that advice of counsel negates willfulness, where there's an opening for advice of counsel to negate willfulness, is where you have an ambiguous or unclear order and the defendant chooses among plausible alternatives one option in complying with the subpoena based on the advice of counsel. So I don't think there's as much of a disconnect on the applicable law in this case as defense counsel would suggest. And I'd also point out to the court that the district court considered that good faith argument, found that the subpoena was clear in this case, and that the defendant's method of bringing in the junk mail was not a plausible alternative. So you would say in this case it's not a defense? The government's first position, yes, your honor, is that bringing in the junk mail was a flat refusal to comply with a clear subpoena. I thought your position would be this subpoena is clear, it's unambiguous, and so that there's nothing for an attorney to advise to do or not do because it's very clear. Correct. That probably said that out of order. So yes, clear and unambiguous subpoena, flat refusal to comply, no advice of counsel defense. But the court also considered the possibility, the district court in this case, that maybe this was good faith compliance among plausible alternatives and rejected that defense and found that the subpoena was clear and that showing up with junk mail was not a plausible alternative. And so the district court's already resolved this issue and defense counsel can't come up here on appeal and ask this court to reweigh those findings. The issue's already been solved by the district court and unless that finding is clearly erroneous there's no issue on appeal. Counsel told her hypothetically that this subpoena is unconstitutional and you should just move to quash it. That would be OK. If the defendant had moved to quash the subpoena that would be OK. No matter how frivolous that was, that advice is. It would have been litigated completely differently. No, no, but even if on his face it was just flatly frivolous it wouldn't make any difference would it? She would have that defense. Said I did it solely because counsel told me to do that. I'm not completely understanding the hypothetical but if it's a Hypothetical is look at the subpoena. The lawyer says this is categorically unconstitutional. Move to quash it. She does that. Upon looking at the court says this on his face is absolutely a frivolous objection. It wouldn't make any difference. She would never be charged or I mean be found guilty of criminal contempt. You can see that? If she had moved to quash there would be no issue here in this case because it would have been litigated on the motion to quash. All right, so instead what she does is she says wait a minute they have taken almost everything I have. As a matter of fact it is everything and she explains it undisputed to her counsel and counsel said you have. They have everything but the only thing that might be they don't have is maybe mail has come or something later. Bring that just in case that's responsive. She does that. Where is the willfulness? And under these circumstances. What the district court found and what. I know what the district court found but tell me what's willful about that? This is not a situation where they have never been in at all. I agree that makes it simple. We want all your business records. You never produced any of it. You come and say well I'm just going to bring you some junk mail because my lawyer said that's all I need to bring. That's clear. But here the government started off with the long hand of government taking the documents most of which and what they didn't take was their choice. They had their hand in everything they wanted. Then they come back later and say let's make this a full investigation. We have to be very careful. Our framers of the constitution take these things to be axiomatic. This is one of the most direct involvements in government. You're coming in the strong hand of the government seizing. You did that. At best what we talk about is what residual is there. She went to her lawyer and the lawyer said no they have everything. They just give them something. So to categorize this as she just sent junk mail in is greatly undermines the facts of this case. The law provides options in that case. The option that the defendant doesn't have is to make a choice to ignore the subpoena. The defendant could have moved to quash. The defense counsel could have picked up the phone and called the government. Neither of those things happened and they were both important to the district court's finding of wilfulness in this case. That's not required though. You tell me this is not a case of best practices. That's not the standard. You don't have to raise it by saying I use the best standard practice. She can do so and raise that whatever you want to call it defense or whatever to negate an element solely by talking to her lawyer. She doesn't have to involve the government in that conversation. As a matter of fact it's a very private conversation. It's one that we don't want the government involved because she's right it may raise questions of the fifth amendment and she has a right to assert those and she indicated she might. But she went to counsel and the question is it seems to me now that she's not credible because she didn't do everything she could have done in the grand jury process. It turns logic on its head to some degree. Just to briefly respond your honor what the case law says is when presented with a clear order from a court the defendant doesn't have a right to refuse to obey that order. But the order was not clear in this context because they had already seen almost everything she had. That's the difference. It's not just the four corners lack of ambiguity and clarity. It's in the context. Text without context is pretext. You have to look in the context and take in almost everything she had. And just one factual clarification your honor to that point the initial search warrant that was authorized in this case did have limitations as to the year and the types of documents that the government was seeking. It did not include things like payroll records which is what the government was after when the shift of their investigation changed in connection with this grand jury investigation. And so the government did have a good faith belief and was seeking documents that were different from and not subject to the prior search warrant. Just as a factual clarification I think that's clear from the testimony and evidence at the show cause hearing. If the court doesn't have any further questions. Let me ask you one more question that sort of follows Judge Tratchner's question. To understand that there's a split in the circuits on whether advice and counsel is available as a defense in a criminal intent context. What is the government's position? It's not as clear as a split in authority and I've tried to explain this in response to my question or response to Judge Tratchner's question. But essentially what circuits have held is that if you're presented with a clear unambiguous subpoena you can't flatly refuse i.e. not show up or not comply and then say my lawyer told me not to do that. What is available as a defense and the government recognizes is available as a defense is if you have a subpoena or some order from the court that's subject to interpretation and the defendant takes a plausible alternative among those interpretations based on the advice of counsel. I think that's the fairest statement of the law and I'm not sure it's as stark as a split in authority but that's sort of the two different prongs of the advice and counsel defense in response to an intent case. And applying those prongs with affirmative defense, would the defense apply here? No, and the district court applied that law and found that it didn't. There's no question that the district court applied the law that the defendant says should have applied from the Marks case and the district court found A, that this is a clear unambiguous subpoena and B, that the defendant's showing up with junk mail in response to that subpoena was not a plausible alternative. And I believe that's on either page 362 or 363 of the joint appendix. And so the court considered properly the advice of counsel and the good faith defenses and found that neither one applied in this case. And the government would ask, unless there's further questions, that this court affirm district court's finding. OK, thank you, Mr. Miller. Boone? I just have a few points in rebuttal. Well, I guess I have six counsels of view. The first is that Mrs. Westbrook's preserved her challenge. All the proceedings below focused on the burden shifting question and what she had to prove in the way of a burden of production to get the defense into play and then what the government had to prove beyond a reasonable doubt to disprove her defense. So the plain error review is not the standard here. To your point, Judge Gregory, you're right. She didn't have to stand up at the grand jury hearing and say, I'm relying on the advice of counsel. And she wouldn't have anyway because she was trying to comply with the subpoena based on her attorney's advice. The government also suggested, again, that Mrs. Westbrook's conduct here would undermine the process for issuing and following through on subpoenas. I would just remind the court that's not true. The government can always seek civil contempt sanctions and can always negotiate in good faith with a witness about overly broad subpoenas. Here, I think the district court did say that the subpoena was clear, but it's clearer in the sense that it said, give me everything in the world. And I think the government conceded below that the typical practice in the district is to negotiate down from overly broad subpoenas to get at what they really want. That didn't happen here. So the government had that option at its disposal. The government also suggests that the district court doubted Mrs. Westbrook's credibility in as much as she testified that she had given the subpoena to her attorney and relied on counsel's advice. That's, as far as I can tell, not true. He certainly questioned her credibility on other peripheral questions relating to certain payroll records, but on her consistent testimony that she gave the subpoena to her lawyer and relied on his advice, there was no countermanding fact and no adverse credibility finding. And I would also add and repeat sort of what I ended with before, that Mrs. Westbrook is  She isn't a lawyer. She didn't even know what a subpoena was. She gave it to her lawyer. She did the best that she could. Based on his advice, she can't be said to have willfully violated the subpoena. If there's nothing else, I'll close. Thank you, Your Honor. We'll come down and recounsel and then go into our next case.
judges: William B. Traxler, Jr., Roger L. Gregory, G. Steven Agee